LEVI P. MORTON, as Sole Surviving Executor of the Last Will and Testament of LIZZIE H. PERKINS, Deceased, v. ELLEN C. WOODBURY, Respondent, and ZACHARIAH JELLISON et al., as Executors of the Last Will and Testament of THOMAS HARWARD, Deceased, Appellants.

1. WILL — RESIDUARY LEGATEE. No particular mode of expression is necessary to constitute a residuary legatee; it is sufficient if the intention of the testator be plainly expressed in the will, that the surplus of his estate, after payment of debts and legacies, shall be taken by a person there designated.

2. POSITION OF RESIDUARY CLAUSE. While the residuary clause in wills is usually the last of its disposing provisions, still, the mere fact that it is not the last, is not of controlling consequence, and can have no effect except as it bears upon the question of the intent of the testator.

3. INTENT OF TESTATOR. In seeking to discover the intent of the testator, all the provisions of the will are to be treated as valid; and the fact that a certain provision is invalid is irrelevant in determining the intent.

4. RELATION OF RESIDUARY CLAUSE TO FOLLOWING BEQUEST. The fact that a general residuary clause gives to the person named therein all the property "not before specified" does not invalidate a subsequent particular bequest to another; and if such subsequent bequest is otherwise valid it is to be deemed an exception to the residuary clause, but if it fails by lapse, or by an analogous event, it falls into the residuum and passes to the residuary legatee.

5. PARTICULAR RESIDUE. Where the words of a residuary clause are of themselves sufficient to constitute the person named therein a general residuary legatee, a clear expression in the will or special words of unmistakable import are required to render him the legatee of a particular, instead of a general, residue.

6. FAILURE OF DISPOSITION OF PART OF RESIDUE. Where there is a disposition of a part of the residue, and it fails, it will not go in augmen-

tation of the remaining parts as a residue of a residue, but will devolve as undisposed of.

7. SPECIFIC BEQUESTS TO RESIDUARY LEGATEE. The fact that a will contains specific bequests to the person afterwards named as legatee in a residuary clause does not tend to show that such person was not intended to be the general residuary legatee, where the gift of the residuum is accompanied with a request that the legatee shall dispose of it as the testator may direct.

8. WILL CONSTRUED — RESIDUARY CLAUSE. The disposing portion of a holographic will, after making several particular bequests and devises, concluded with the following clauses: "(Fourth.) I appoint E. C. W. my legatee and give to her all not before specified in this and request her to give as I may direct or sell from what remains. (Fifth.) I appoint J. H. W., L. P. M. and J. J. R. executors, and direct that after the payment of my debts and sums above named that they shall sell bonds, stocks and other property and give the money thus collected to hospitals and homes for women in Washington and New York." *Held*, that the fourth clause was a good general residuary clause; that the fifth clause was not a residuary clause; and that the bequest in the fifth clause, being void for uncertainty, lapsed, fell into the residuum, and passed to the person named in the fourth clause, as general residuary legatee, and not to the next of kin by intestacy.

*Wyman* v. *Woodbury*, 86 Hun, 277, affirmed.

(Argued May 10, 1897; decided June 8, 1897.)

APPEAL by the executors of Thomas Harward, deceased, from a judgment of the General Term of the Supreme Court in the first judicial department, entered *nunc pro tunc* as of March 7, 1895, which modified and, as so modified, affirmed a final judgment entered upon a decision of the court on trial at Special Term.

The action was brought by the executors of Lizzie H. Perkins for the construction of her will. The will was as follows:

"I, Lizzie H. Perkins, now in the city of Paris, do now make and declare this as my last will and testament.

"After the payment of all my just debts and funeral expenses I give and bequeath the sum of five hundred dollars to Greenwood Cemetery, to be invested by it and its successors, the income therefrom to be applied to the care and preservation of the burial lot now owned by me in said cemetery.

" Second. I give and bequeath to my executors, hereinafter named, the sum of three thousand dollars in trust to invest during the lifetime of my father, and after his death I direct my executors with said three thousand dollars to purchase a suitable lot in the Bath burying ground in state of Maine, and to cause the remains of my mother and brothers to be removed from the tomb which I own in the city of Bath, and to be placed in the ground in the said burying ground, and to cause the proper memorial stones to be erected.

" (Third.) I give and bequeath to the persons hereinafter named, money and articles specified below :

" To Mary Perkins, of Paris, France, the sum of six thousand dollars.

" To Martie Richardson, of Bath, Maine, the sum of four thousand dollars.

" To Lottie Berard, three thousand dollars.

" To Clara Bocher, three thousand dollars.

" To Florence Matthews, five thousand dollars and my lot in Newport.   Also my harp, now in Lincon Warehouse.

" To Lizzie H. Pennell, of Brunswick, Maine, three thousand dollars.

" To Jennie Ferrin, daughter of Charles B. Ferrin, three thousand dollars.

" To Dr. Labadie Lagrave, for the poor he may so aid, one thousand dollars.

" To the Bath Soldiers' Home, in Bath, two thousand dollars.

" To the poor of Bath, one thousand dollars.

" To Ellen Woodbury, my lot in Washington, my diamonds and rubies.

" I direct every family portrait *burned.*   Also all papers so marked.

" To John H. Wyman, my pictures and books, also a silver pitcher of Philadelphia make.

" To L. P. Morton, a box of old Sevres plates, now in a black trunk at Lincon Warehouse.

" To Louise Barlow, my lace.

" To the American Hospital, if erected in Paris, that strangers, women, may have a place to go, I give four thousand dollars.

" Anything now remaining from the old Bath house I give to Lizzie Pennell.

"A trunk with linen at Hottinguer to May Perkins.

"A trunk with underclothes at Hottinguer to May Perkins.

" Two boxes containing furniture at Hottinguer to May Perkins.

" To Clara Bocher all things given me by Madame De Rothschild.

"A gray French trunk, the last sent from hotel, I give to Florence Matthews.

" (Fourth.) I appoint Ellen C. Woodbury my legatee and give to her all not before specified in this and request her to give as I may direct or sell from what remains.

" (Fifth.) I appoint John H. Wyman, L. P. Morton, John J. Richardson executors, and direct that after the payment of my debts and sums above named that they shall sell bonds, stocks and other property and give the money thus collected to hospitals and homes for women in Washington and New York.

" (Sixth.) My executors are not to give bonds. And it is my request that all I have here requested be as private as possible, as my affairs regard no one.

" LIZZIE H. PERKINS."

The foregoing will was executed in the city of Paris on the sixth day of January, 1890. The testatrix died at that place the twenty-third day of September, 1891, although she was at the time a resident of the city of New York. Her will was admitted to probate by a Surrogate's Court held in and for the city and county of New York on the twenty-second day of September, 1892.

The testatrix left her surviving as her only heir at law and next of kin her father, Thomas Harward, who at the time of her death was one hundred and three years of age and pos-

sessed of nearly as much property as the testatrix, as appears from the provisions of his will, which is made a part of the record. He died shortly after the death of the testatrix, and the appellants are the executors of his last will and testament. The testatrix's mother died previous to the making of the will in question, and at the time it was made her father had married again and was living with his second wife.

Inclosed in an envelope with the will was a paper which was as follows: "Nell, sell what you can of my things and give the money to the poor. Give of my paintings to Mrs. Dana, something. Give my clothing to Lizzie Pennell and my guitar. To Martie Richardson the small set of silver with kettle, the large Sevres to be sold, money to be given to the poor. Sell the contents of the two large boxes at Lincon, money to be given to the poor. Give the McKever girls some of my paintings. I am too wild Nell with the thought of death to do what I would. As I think of anything I shall put it down. Try to do as I would wish. Give Mrs. Dana my Indian shawls. Florence Matthews the small silver kettle and little cups Tea pot. Burn every paper and *family picture.*"

The testatrix spent much of her time in the city of Washington with the respondent, who resided there and was her most intimate friend, their friendship having begun when they were girls at school and continued until the death of the former.

Her estate consisted of cash, $2,688.14; furniture, clothes, ornaments and jewels, valued at $3,478.10; bonds and stocks, valued at $123,624; a lot in Brooklyn, valued at ten thousand dollars, a lot in Newport, devised to Florence Matthews, of the value of six thousand dollars; and a lot in Washington, devised to the respondent, valued at $2,600. Thus, the value of her whole estate was $148,390.24. The specific legacies of money given by the will amounted to $38,500; the land specifically devised, to $8,600, while the things which were denominated on the argument as "personal belongings" were only of the value of $3,478.10.

The case was tried at Special Term, where it was held that all the devises and bequests contained in the will were valid and effectual, except the specific bequest of one thousand dollars to the poor of Bath, which was held void for uncertainty; the bequest to the American Hospital, if erected in Paris, which was held void, because no such institution was in existence at the time of the testatrix's death; and "the residuary devise and bequest to Ellen C. Woodbury, and the direction to the executors to sell property and give the money to hospitals and homes for women in Washington and New York," which were held void for "want of intrinsic certainty and extrinsic application." The Special Term also held that the residuum of the estate, not specifically and validly devised and bequeathed, passed by intestacy to the executors and heirs of Thomas Harward, and judgment was directed accordingly.

Ellen C. Woodbury was the only party who appealed from that decision. On appeal to the General Term, that court modified and practically reversed the decision of the Special Term so far as it adjudged that the provision of the will appointing Ellen C. Woodbury as the testatrix's legatee was void for uncertainty.

*George G. De Witt* and *Daniel G. Rollins* for appellants. If the will of Mrs. Perkins contains any general residuary clause, that clause is the one directing her executors to sell "stocks, bonds and other property," and give the money thus collected to hospitals and homes for women in Washington and New York; it is not the clause which appoints Ellen C. Woodbury "my legatee." (*Roseboom* v. *Roseboom*, 81 N. Y. 359; *Weeks* v. *Cornwell*, 104 N. Y. 325; *Roe* v. *Vingut*, 117 N. Y. 204; *King* v. *Woodhull*, 3 Edw. Ch. 79; *Kerr* v. *Dougherty*, 79 N. Y. 327; *Lawton* v. *Corlies*, 127 N. Y. 100; *In re Reynolds*, 124 N. Y. 388; *Peaslee* v. *Fletcher*, 60 Vt. 188; *Dole* v. *Johnson*, 3 Allen, 364; *Johnson* v. *Goss*, 128 Mass. 433.)

*William G. Choate* and *Charles C. Marshall* for respondent. The provision of the will, "I appoint Ellen C. Wood-

bury my legatee, and give to her all not before specified in this, and request her to give as I may direct or sell from what remains," is the residuary clause of the will. This construction alone is consistent with the evident intent of the testatrix not to die intestate, and gives harmony and meaning to all the provisions of the will. It is, therefore, the true construction of the will. (*Weeks* v. *Cornwell*, 104 N. Y. 336; *Van Vechten* v. *Keator*, 63 N. Y. 52; *Fleming* v. *Burrows*, 1 Russ. 276; *Merkel's Appeal*, 109 Penn. St. 239; *Fox's Appeal*, 11 W. N. C. 236; *Phillips* v. *Davies*, 92 N. Y. 199, 204; *Evans* v. *Jones*, 2 Coll. 516; *Cambridge* v. *Rous*, 8 Ves. 25; *Leake* v. *Robinson*, 2 Merivale, 393.) The predominant intention of the testatrix, as expressed by her will, must control in its construction. That predominant intention is that her next of kin should be absolutely excluded from sharing in her property, and that intestacy should not result under any circumstances. (*Chrystie* v. *Phyfe*, 19 N. Y. 348; 1 Jarman on Wills [6th ed.], 476, 484; 2 Jarman on Wills, 771; 2 Redfield on Wills [2d ed.], 116; Schouler on Wills [2d ed.], §§ 476, 490; *Vernon* v. *Vernon*, 53 N. Y. 352; *Given* v. *Hilton*, 95 U. S. 591; *B. S. D. Co.* v. *Coffin*, 152 Mass. 99; *Schult* v. *Moll*, 132 N. Y. 122.) The construction in favor of Miss Woodbury as residuary legatee is supported by the context. The construction in favor of Miss Woodbury as the residuary legatee and devisee is the only construction in harmony with the rules governing the judicial construction of wills. (*Roe* v. *Vingut*, 117 N. Y. 212; Schouler on Wills [2d ed.], §§ 473, 474, 479, 490; *Roseboom* v. *Roseboom*, 81 N. Y. 359; *Van Vechten* v. *Keator*, 63 N. Y. 52; *Temple* v. *Sammis*, 97 N. Y. 526; *Vernon* v. *Vernon*, 53 N. Y. 351.) The defendant, Miss Woodbury, also takes the testatrix's residuary real estate. (*Laing* v. *Barbour*, 119 Mass. 523; *Hughes* v. *Pritchard*, L. R. [6 Ch. Div.] 24; *Jackson* v. *Kelly*, 2 Ves. Sr. 285.) The words following the appointment of Miss Woodbury as legatee, to wit: "And request her to give as I may direct or sell from what remains," do not create a precatory trust.

(*Langdon* v. *Astor*, 3 Duer, 477; *Williams* v. *Freeman*, 83
N. Y. 561; *In re O'Neil*, 91 N. Y. 516; 1 Perry on Trusts,
§ 93; *Warriner* v. *Rogers*, L. R. [16 Eq. Cas.] 340; *O'Hara*
v. *Dudley*, 95 N. Y. 403; *Wallgrave* v. *Tebbs*, 2 K. & J. 313;
*Tee* v. *Ferris*, 2 K. & J. 358; *Olliffe* v. *Wells*, 130 Mass. 221;
*Morice* v. *Bishop of Durham*, 10 Ves. 527; *Briggs* v. *Penny*,
3 De G. & S. 539.)

MARTIN, J. This court is called upon to construe the will
of the testatrix, and, if possible, under existing rules of law,
to ascertain her intent, and thereby determine the devolution
of her estate. The will was holographic, written by the tes-
tatrix when in a foreign land, distant from home and friends,
and it is manifest that she was unaided in its preparation by
legal counsel or professional advice. Under these circum-
stances, that we find it to have been inartificially and unskill-
fully written, rendering the intent and meaning of the testa-
trix somewhat obscure and uncertain, excites no surprise.
Yet its uncertainty of expression and obscurity of meaning
in no degree absolve this court from the duty of interpreting
it, unless it is so vague and indefinite as to render the purpose
and meaning of the testatrix incomprehensible, as it is only
when all the established rules of law for the construction of
wills have been applied in vain that the court may reject the
instrument as impossible of construction. Hence, it is our
duty to carefully examine and diligently study the provisions
of this will, apply to it the proper rules of construction, and,
so far as possible, interpret it in accordance with the intent
and purpose of the testatrix.

The parties having acquiesced in the decisions of the courts
below upon most of the questions originally submitted, the
only controversy between them at present is whether the pro-
visions of the fourth article of the testatrix's will, whereby
she appointed the respondent her legatee, are sufficient to con-
stitute her the general residuary legatee of her estate. The
language of that provision is, " I appoint Ellen C. Woodbury
my legatee, and give to her all not before specified in this, and

request her to give as I may direct or sell from what remains."
It is obvious that the word "all" refers to her property or
estate, and that the word "this" relates to her will.   There-
fore, if considered alone, without reference to the other pro-
visions, it is plain that it should be interpreted as though it
read, "I appoint Ellen C. Woodbury my legatee, and give her
all my property or estate not before specified in this will."
The words, "I appoint Ellen C. Woodbury my legatee, and
give to her all not before specified in this," were sufficient, and
passed the property to her as effectually as though more formal
words had been employed. (*Tayler* v. *Web*, Styles, 301;
*Jackson* v. *Kelly*, 2 Vesey Sen. 285; *Waite* v. *Combes*, 5 De
Gex & S. 676; *Spark* v. *Purnell*, Hobart, 75; *Parker* v.
*Nickson*, 1 De Gex, J. & S. 177, 182; *Day* v. *Daveron*, 12
Simons, 200; *Pitman* v. *Stevens*, 15 East, 505; *Laing* v.
*Barbour*, 119 Mass. 523; *Doe* v. *Roberts*, 7 Meeson & W.
382.) "No particular mode of expression is necessary to con-
stitute a residuary legatee.   It is sufficient, if the intention of
the testator be plainly expressed in the will, that the surplus
of his estate, after payment of debts and legacies, shall be
taken by a person there designated." (2 Williams on Execu-
tors [7th Am. ed.], 801; 1 Jarman on Wills [6th Am. ed.],
724.) That the language employed in the fourth article of the
will is apt, appropriate and sufficient to constitute the respond-
ent her residuary legatee, there can be little doubt.

If this provision had been the last article of the will,
there could have been no question that it was intended as a
general residuary clause, and that it should be so interpreted.
Indeed, so much was admitted upon the argument.   But such
is not the case.   It is followed by a provision which appoints
executors, and directs them, after the payment of her debts and
preceding legacies, to sell stocks, bonds and other property,
and to give the fund thus created to homes and hospitals for
women.   The effect of that provision upon the clause under
consideration is one of the questions involved in this case.
While the residuary clause in wills is usually the last of its
disposing provisions, still, the mere fact that it is not the last,

is not of controlling consequence, and can have no effect except as it bears upon the question of the intent of the testatrix. If the language of the fourth article is fairly susceptible of being construed as a residuary clause, and the will indicates that intent, it should be so interpreted regardless of its position in the will. (*Fleming* v. *Burrows,* 1 Russ. [Eng. Ch.] 276; *Merkel's Appeal,* 109 Penn. St. 239; *Fox's Appeal,* 11 W. N. C. 236.) In 1 Jarman on Wills (p. 754) it is said: " Though the residuary clause is usually, it need not necessarily be, the last in the will, and any particular bequest which follows that clause may, if made to different legatees, reasonably be read as an exception out of the property comprised in it." (Citing *Rogers* v. *Thomas,* 2 Keen's Ch. 8; *Martin* v. *Glover,* 1 Coll. 269; *Arnold* v. *Arnold,* 2 My. & K. 365; *Lysaght* v. *Edwards,* 2 Ch. Div. 513.)

The appellants are correct in asserting that the fact that the fifth clause is invalid is irrelevant in determining the testatrix's intent. It is quite true that the fourth article should be interpreted as though all the provisions of the will were valid, for it is only when thus considered that we can discover the intent of the testatrix. It is, however, further insisted that if the fourth clause of the will were to be held to constitute a general residuary provision, it would render the fifth futile and ineffectual, even if otherwise valid. With this insistence we cannot agree. If the fourth is a residuary clause, it does not affect the fifth, or render it invalid, any more than it does the other dispositive clauses of the will. The bequest to hospitals and homes, if valid, would have excluded from the general residuum of the estate the property thereby disposed of, and by so much diminished the amount of the residuum. It, however, being invalid, like any other lapsed legacy, fell into the residuum and passed to the residuary legatee as property not well disposed of. The case of *Evans* v. *Jones* (2 Collyer, 516) is analogous in principle to the case at bar. There the testator bequeathed his personal estate except his money laid out in stock, mortgages and bonds to A., and his money in stock and mortgages and bonds he

gave to B.   The gift to B. failed by an event analogous to a
lapse, and it was held that the property which was intended
to be given to B. passed under the residuary bequest to A.

But the further claim is made that the disposition contained
in the fourth article is at most a bequest to the respondent of
a particular residue *ejusdem generis* with articles previously
mentioned, and not a general residuary gift.   If the rule, that
where an enumeration of certain specific things is followed by
a general word or phrase, the word or phrase of general
description is to be deemed intended to mean things of the
same kind, and cannot include things of a nature different
from those specifically mentioned, were applied, it would not
aid the appellants.   For, when we examine the provisions of
the will, we find that the greater number of devises and
bequests made by the provisions which preceded the fourth
clause of the will, consisted of cash and real estate, and that
substantially all of the pecuniary legacies were to be paid
from a fund to be derived from the sale of the testatrix's
stocks, bonds and other similar investments, while the articles
that were denominated by the appellants' attorney as " per-
sonal belongings," formed but a small portion in value of the
property thus disposed of.   Therefore, if the fourth provis-
ion were to be construed as giving to the respondent all the
testatrix's property of the same kind and nature as that before
specified, it would clearly include every kind of property of
which she died seized.

The appellants, while they assent to the rule that invalid or
lapsed legacies fall into the residuum and go to the general
residuary legatee, where there is a clearly defined general
residuary clause, insist that upon a reading of the whole will,
it is clear that the testatrix had no intention of making the
respondent her general residuary legatee, but that her inten-
tion was to make her a legatee of a particular residue, although
not defined in the fourth article, but which they claim may be
identified by reference to the context.   As sustaining this
doctrine they cite *King* v. *Woodhull* (3 Ed. Ch. 79, 82.)   In
that case it was decided that where it is manifest that the resi-

due given is confined to a particular fund or property, the residuary legatee is to be kept to it strictly. In his opinion the vice-chancellor said : " To entitle a residuary legatee to the benefit of a lapsed or void bequest, however, he must be a legatee of the residue generally, and not partially so ; for, where it is manifest, from the express words of the will, that a gift of the residue is confined to the residue of a particular fund or description of property, or to some certain residuum, he will be restricted to what is thus particularly given, since a legatee cannot take more than is fairly within the scope of the gift. But to exclude what may fall by lapse or invalid disposition, from the gift of the residue, as it may be supposed that the testator did not intend to die intestate as to any portion of his property, when he set about making a will, and is supposed to exclude the residuary legatee only for the sake of the particular legatee, the law requires that he should use very special words, clearly limiting the gift of the residue, and showing in express terms an intention to exclude such portions of his estate as may fail to pass under previous clauses of the will, in order to take it out of the general rule above stated." After referring to several cases, he adds : " From these and other cases on this subject, it will be seen that, in considering a residuary clause in a will, the court will look at the context to ascertain, not so much whether it was the intention that the residuary legatee should take the benefit of a lapsed bequest (for it may be argued, in most cases, that the testator does not mean that the residuary legatee should take what is previously given from him, for he does not contemplate the case), but whether the words used are so strong and expressive as necessarily to exclude property which falls in by lapse, and to limit the bequest of the residue to a particular residue, instead of permitting it to be read as a general residuary bequest." This rule has been often followed by this court, as will be seen by referring to *Kerr* v. *Dougherty* (79 N. Y. 327, 346, 360), *Matter of Benson* (96 N. Y. 499, 510) and *Riker* v. *Cornwell* (113 N. Y. 115, 126), and cases cited. In the last case Judge GRAY, in delivering the opinion of the court,

said: "I think the doctrine is firmly established, by the reported cases and by the text books, that where the residuary bequest is not circumscribed by clear expressions in the instrument and the title of the residuary legatee is not narrowed by special words of unmistakable import, he will take whatever may fall into the residue, whether by lapse, invalid dispositions or other accident." This language was quoted with approval in *Lamb* v. *Lamb* (131 N. Y. 227, 235), *Carter* v. *Board of Education* (144 N. Y. 621, 625), and *Matter of Miner* (146 N. Y. 121, 131). In the *Lamb* case, ANDREWS, J., said: "But where the language of a residuary clause is ambiguous, the leaning of the courts is in favor of a broad rather than a restricted construction." The doctrine of these cases does not sustain or aid the appellants' contention. As we have already seen, the language of the fourth clause is sufficient to constitute the respondent a general residuary legatee, and we are unable to find anything in the other portions of the will which, under the rules established by the cases cited, would have the effect of so limiting that clause as to make her the residuary legatee of a particular residue only. To accomplish that result, very special words, which clearly limit the gift to a particular residue, and show a clear intention to exclude such portion of her property as may fail to pass under other clauses of the will, must have been employed. We find no such words in this will. Surely it cannot be properly said that this instrument contains any such clear expression or special words of unmistakable import as would limit the fourth article of the will to an extent that would justify the conclusion that the respondent was a legatee of a particular, instead of a general, residue. Applying to the will under consideration the rules of interpretation established by the foregoing authorities, it becomes obvious that the provisions of the fifth article of the will do not circumscribe or narrow the words contained in the fourth, and that the latter must be regarded as a general residuary clause and not a particular one relating to a particular residue only.

There is a class of English cases where the courts seem to

have inferred that a bequest, in general terms, could not have the effect to carry the entire residuum, if particular portions were subsequently given to other persons, of which *Crichton* v. *Symes* (3 Atk. 61) may be regarded as an illustration. This ground of inference is said by Redfield in his work on Wills (p. 108) to be " entirely unsatisfactory; since the testator may have accidentally omitted some one whom he intended to remember in his will, until after the insertion of the residuary clause; or he may have chosen to begin his will by naming the residuary legatee," and he cites several later English cases as sustaining that doctrine. We think it is quite plain that the testatrix, by the fifth article of her will, intended merely to authorize her executors to sell bonds, stocks and other property of the same kind and nature, to procure a fund for the payment of her debts and legacies and for the benefit of homes and hospitals for women, and that it can, in no proper sense, be regarded as a general residuary clause. It is true that the fund from which the legacy to homes and hospitals was directed to be paid was to be created by the sale of a certain species of property, and that her debts and other legacies were to be first paid. There was no gift of the stocks, bonds or other property. It was at most an attempt on her part to give a portion of the money she had invested in that kind of property to the purposes specified. That she intended to divert a portion of her estate from the general residuum, and to give it to homes and hospitals, is plain; but that fact is not controlling as in most cases of lapsed or void legacies, such an intention exists. Nor do we think it denotes any intention on her part to make her executors, or the objects of her bounty, her residuary legatees. We feel assured that the fifth article of the testatrix's will contains no such special words, nor any such express terms as to show an intention to exclude that portion of her estate from the residuum in case it should fail, as the rule relating to the subject requires.

Where there is a disposition of a part of the residue, and it fails, it will not go in augmentation of the remaining parts as a residue of a residue, but will devolve as undisposed of.

" Residue means all of which no effectual disposition is made by the will, other than (by) the residuary clause. In the instance of a residue given in moieties, to hold that one moiety lapsing shall accrue to the other, would be to hold that a gift of a moiety shall eventually carry the whole." (1 Jarman on Wills, 764, and cases cited.) We find no such principle involved in this case. Here was a residuary clause, following which there was a provision by which the testatrix sought to dispose of a portion of her estate to hospitals and homes for women. This bequest was void, and, consequently, lapsed, and as it cannot be properly regarded as a residue of a residue under the rule previously adverted to, it fell into the residuum and passed to the respondent as general residuary legatee.

Again, the appellants urge that the situation and circumstances of the testatrix, the nature and value of her estate, and the letter written by her to the respondent show that she did not intend to constitute the latter her general residuary legatee. We find nothing in the situation or circumstances of the testatrix, or in her letter, which leads us to that conclusion. She was without family or relatives, except a father who was more than a centenarian, possessed of a fortune in his own right, much of which he gave to charities, so that there was no existing necessity to provide for him, and she had no such intention as is conclusively established by the provisions of her will. The respondent was her most intimate friend, the one upon whom she relied to destroy her papers and family pictures and for the disposition of at least some portion of her estate when she was " too wild with the thought of death " to do what she would. Moreover, in the letter she expressed the desire that the respondent should do with the property coming into her hands as she, the testatrix, would. This plainly denotes that the testatrix contemplated that under her will there would come to the hands of the respondent at least a portion of her estate, which was to be applied according to her directions, if any she should give. The respondent was the one person in whom she reposed the

utmost confidence, and to whom she was most closely drawn by the ties of a lifelong friendship and an enduring affection. Situated as she was, that she should constitute such a friend her residuary legatee was but natural, and might well be expected. Hence, it would seem that the situation and circumstances referred to tend more strongly to show that it was her purpose to make the respondent her residuary legatee than to establish a contrary intent.

The appellants likewise claim that the fact that the testatrix had previously given the respondent a lot in Washington and her diamonds and rubies, tends to show that she did not intend to make her the residuary legatee of her estate. Just how the former gift contributes to the establishment of that fact is not quite apparent. There were certain specific articles and property which she desired the respondent to have and enjoy as tokens of her friendship and affection. The residue of her estate, after the payment of her debts and legacies, was given to the respondent, with a request that she should dispose of it as the testatrix might direct. This gift was intended as one which might become provisional to the extent that if, during her life, the testatrix should request the respondent to dispose of it in some particular manner, she expected her to do so. Under these circumstances we find, in the previous gift to the respondent, nothing which leads to the conclusion that the testatrix did not intend to make her her general residuary legatee.

We think it cannot be properly held that the fifth clause of the testatrix's will was a general residuary clause. That it was not intended to include all of her property undisposed of by her special bequests and devises is manifest when construed in the light of the other provisions of the will. Any supposed repugnance·between the fourth and fifth articles of the will arises only when the latter is sought to be interpreted as a general residuary clause. When regarded as an attempt by the testatrix to bequeath a portion of her estate to a specific object, and when the language employed in the fourth clause of the will is given its natural and obvious meaning, it at once

becomes reasonably clear that the testatrix intended to make the respondent her general residuary legatee, and that she should take all her property not well disposed of by her will. That was the conclusion reached by the learned General Term, and, after a careful examination of the whole case, we are of the opinion that the decision of that court was right, and its judgment should be upheld.

That the testatrix in this case did not intend to die intestate as to any portion of her estate is entirely certain. Therefore, it is our duty to so construe her will as to effectuate that intention, if possible. That we have done, and we feel quite confident that we have reached a proper result and one which most nearly effectuates the intent of the testatrix. When the will is thus interpreted, all its provisions become practically harmonious and each is given its proper and intended effect.

The judgment should be affirmed, with costs to all the parties, payable out of the estate.

All concur, except O'BRIEN and VANN, JJ., who dissent.

Judgment affirmed.