In re HOFFMAN'S WILL.

AVERY et al. v. HOFFMAN et al.

(Supreme Court, Appellate Division, Second Department.   October 7, 1910·)

1. WILLS (§§ 81, 440, 441*)—CONSTRUCTION—INTENTION OF TESTATOR.

   The court in determining the construction and validity of a will must look to the language thereof, and gather therefrom in the light of the circumstances the intention of testator, and, where his intent as so expressed is legal, the will is valid.

   [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 201, 202, 956, 958; Dec. Dig. §§ 81, 440, 441.*]

2. WILLS (§ 612*)—CONSTRUCTION—ESTATES ACQUIRED.

   Where a will begins with an absolute gift, the latter part of the will, in order to cut it down, must show as clear an intention in that direction as the prior part does to make it.

   [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1387–1392; Dec. Dig. § 612.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. WILLS (§ 184*)—CODICIL—EFFECT.

A codicil does not operate to revoke or modify a previous devise or bequest beyond the clear import of the language used.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 462–467; Dec. Dig. § 184.*]

4. PERPETUITIES (§ 7*)—CONSTRUCTION—SUSPENSION OF ALIENATION.

Testator bequeathed to each of two nieces and a sister a pecuniary legacy in trust to pay the income to them, and a part of the legacy at their election for a specified purpose, and provided that, on the death of the nieces without issue before the death of the sister, their share should go to the sister, and, on the death of the sister without issue before the death of her mother, her share should go to the mother. *Held*, that the legatees took an absolute estate to the amount of the legacy, subject to the trust, which could not be extended beyond the single life of each legatee, and the absolute gift became effective on the termination of the trust, so that there was no possibility of an illegal suspension of ownership beyond the life of the legatees.

[Ed. Note.—For other cases, see Perpetuities, Cent. Dig. §§ 48, 54, 55; Dec. Dig. § 7.*]

5. WILLS (§ 686*)—CONSTRUCTION—TRUSTS—VALIDITY.

Testator gave an absolute estate to each of three pecuniary legatees, subject to a trust. He gave his residuary estate to his mother in trust to pay the income to her, and provided that, on her death, the principal and accumulated income should be divided pro rata between the three legatees, subject to the trust imposed on the gifts to the legatees. *Held*, that the will did not continue the residuary estate in trust after the death of testator's mother, but the residuary estate then vested in the three legatees on the basis of their original legacies, and the shares thus created constituted a new trust to terminate on the termination of the trusts imposed on the gifts to the three legatees.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1631–1637; Dec. Dig. § 686.*]

6. WILLS (§ 448*)—CONSTRUCTION—INTESTACY.

The court in construing a will must, if possible, adopt the construction which will avoid intestacy.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 964; Dec. Dig. § 448.*]

7. WILLS (§ 858*)—CONSTRUCTION—DISPOSITION OF RESIDUARY ESTATE.

Testator gave to each of three relatives a pecuniary legacy in trust, and then gave them a proportionate share of the residuary estate. By a codicil he bequeathed to each of two others, both of whom died before testator, a pecuniary legacy, and made them pro rata residuary legatees with the three relatives on the same conditions. *Held*, that there was no intestacy of the residuary estate, but the three relatives took in the proportion of their original legacies whatever remained undisposed of by the will other than the residuary clause.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 2173–2183; Dec. Dig. § 858.*]

8. WILLS (§ 858*)—RESIDUARY BEQUEST—CONSTRUCTION.

Where a residuary bequest is not circumscribed by clear expressions in the will, and the title of the residuary legatee is not narrowed by special words of unmistakable import, he takes whatever may fall into the residue, whether by lapse, invalid disposition, or other accident.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 2173–2183; Dec. Dig. § 858.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Surrogate's Court, Kings County.

Proceedings for the probate of the will of Charles Ferdinand Hoffman, deceased. From a decree of the Surrogate's Court (65 Misc. Rep. 126, 121 N. Y. Supp. 100), admitting the will and a codicil thereto to probate and construing the provisions thereof, Rosalie A. Avery and others appeal. Affirmed.

See, also, 67 Misc. Rep. 334, 124 N. Y. Supp. 680.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, RICH, and CARR, JJ.

D-Cady Herrick, J. Brownson Ker, and Charles W. Dayton, Jr., for appellants.

Edwin T. Rice and Benjamin A. Morton, for respondents.

WOODWARD, J. Charles Ferdinand Hoffman died in the borough of Brooklyn on April 9, 1909, leaving a last will and testament, which has been admitted to probate, and the questions arising on this appeal go to the validity of the will, and to the proper construction thereof, if the same is held to be valid. Like most of our troubles in this life, the alleged defects in this will are only to be found by those who are looking for them. They have no tangible existence, so far as we have been able to discover. We are to look to the language of the will, and we are to gather its intention from that language, in the light of all the circumstances, and, if the intent of the testator, as so expressed, is a legal one, then it is to be given effect.

The will recites the place of birth, and the time, declares that the testator has never married and has no descendants, and then in its first article declares that:

"I grant and bequeath unto my niece Margaret Hoffman seventy-five thousand dollars ($75,000)."

The second article provides:

"I grant and bequeath unto my niece Carolyn, or Carrie Hoffman fifty thousand dollars ($50,000)."

So far these gifts are absolute and of fixed sums, and the rule is well established that whenever a will begins with an absolute gift, in order to cut it down, the later part of the will must show as clear an intention in that direction as the prior part does to make it, and a codicil will not operate to revoke or modify a previous devise or bequest beyond the clear import of the language used. Goodwin v. Coddington, 154 N. Y. 283, 286, 48 N. E. 729, and authorities cited. After making the above absolute gifts, one of $75,000 and the other of $50,000, the testator provides:

"Both the foregoing legacies shall be held in trust as herein provided in Art. VIII and no husband of the legatees nor any relative or person shall have any control whatsoever over either the principal or income thereof. The income shall be paid only to said legatees respectively and an amount of ten thousand dollars ($10,000) of the principal may be paid to each of them if they so elect when they attain the age of 30 years, to purchase and furnish a home severally to be held in their own several names and right, free from any other control whatever. The remainder of their respective legacies shall remain in trust as provided above as a protection or provision in their old age, and in case of the death of either of them without issue, before the death of their

Aunt Inez Hoffman, legatee under Art. IV herein, then the share of such decedent shall in such event revert to her the said Inez Hoffman. And in case either said nieces should die without issue subsequently to the death of their Aunt the said Inez Hoffman and prior to the death of their grandmother Caroline Hoffman then in such case their respective shares shall in like manner revert to their grandmother Caroline Hoffman."

Following the above provisions is the third article of the will, giving to a brother, since deceased, a plantation in the state of Louisiana, and then the fourth article provides that:

"I grant and bequeath unto Henrietta Louisa Hoffman, commonly known in the family as Inez Hoffman, the sum of one hundred and twenty-five thousand dollars ($125,000) with the proviso that the same shall be placed in trust as herein provided in Art. VIII and the income thereof paid to herself only, no relatives of hers nor any husband that she may ever have, nor other person shall have any control whatsoever over either the principal or income hereby devised, with this proviso however that she may if she wish draw not exceeding ten thousand dollars ($10,000) with which to purchase and furnish a home for herself to be held in her own name and right free from all control whatsoever. In case of her death without issue and prior to that of her mother, all her interest herein shall revert to her mother. I furthermore hereby transfer and make over to the said Inez Hoffman, all my right, title and interest in and to the estate of .my mother Caroline Hoffman in the City of New Orleans, State of Louisiana." .

It is obvious that the scheme of the testator, as thus far revealed, was to make absolute gifts of certain fixed sums of money to his two nieces and a sister, but, being fearful of their ability to care for the same, for he tells us in the eighth article that they "are wholly ignorant of sound business principles and methods," he conceived the idea of placing these several gifts in the hands of a trustee for the purpose of paying over the income during their respective lives, subject to the provision, however, that they might draw $10,000 each of the principal for the purpose of providing and equipping homes, which should be held in their own names and rights. The testator treats of these gifts as separate funds all through the will, and, while it is true that under our statutes the legal title to the funds vests in the trustee, this vesting is only for the purpose of the trust, and this ends with the lives of each of the three legatees, and, when the trust estates terminate, the original gift is still in full effect. It operates to dispose of the property of the testator. This was clearly held in the case of Felter v. Ackerson, 35 App. Div. 282, 55 N. Y. Supp. 7, where the testator provided in the third clause of his will that:

"All the rest, residue and remainder of my property, both real and personal, I give and bequeath to my four sons and two daughters, * * * to be divided equally between them, share and share alike."

And in the seventh clause provided that:

"I order and direct that the shares to be given to my sons William S. Felter and John J. Felter, Jr., be held in trust for them and that George William Reimer, of Rockland Lake, act as trustee of said property and pay over to said William S. Felter and John J. Felter, Jr., the respective incomes derived therefrom."

The Special Term held that by the seventh clause a valid express trust was created of the shares of each of the two sons named, and that, as to the remainders on their death, the testator died intestate,

and that the same passed to the testator's heirs at law.   On appeal the court held that the Special Term was correct in holding that a valid trust for the lives of the two sons was created, but say:

"We think that the court at Special Term erred in its determination that the remainders in these shares after the death of the respective equitable life tenants were undisposed of by the will.   The third clause, standing by itself, would give to the plaintiffs absolute estates in their respective shares.   Two rules of law relative to the construction of wills are well settled.   The first is that, where an estate is given in one part of the will in clear and decisive terms, it cannot be cut down by any words in a subsequent clause that are not as clear and decisive as the words of the clause giving that estate.   *   *   * Second, that the law prefers a construction of a will which will prevent intestacy to one that will permit it.   *   *   *   We are of opinion that the direction of the seventh clause that the shares of the plaintiffs be held in trust is so clear and express as to limit the previous absolute gift found in the third clause.   But the provisions of the seventh clause modify or abrogate those of the third clause only to the extent to which the provisions are inconsistent. The Special Term held and rightly, as we think, that a trust in one of these shares was created only during the life of the equitable life tenant.   Therefore to this extent only does the seventh clause revoke or modify the absolute gift found in the previous clause.   The remainder after the death of the life tenant, which was given to such life tenant by the third clause, remains wholly unaffected by the subsequent dispositions of the will, which deal only with the life estate."

This is exactly the case now before us, and it is in harmony with the strong implication of the will that the estate is to vest in the issue of the several legatees if issue survive them.   See Close v. Farmers' L. & T. Co., 195 N. Y. 92, 100, 87 N. E. 1005, and authorities there cited.

If we are correct in this, then each of the three legatees mentioned above took an absolute estate, to the amount of the legacy, in the testator's estate, subject to the trust, and the testator did not die intestate as to any of such funds, nor could the trust be extended beyond the single life of each of such legatees.   The gift absolute becomes effect-ive upon the termination of the trust, and the trust fund becomes a part of the estate of the legatee, just as the home which may be purchased with a portion of the trust fund becomes a part of such estate. There is no difficulty about this, unless it might be that the implication of the will is so strong that it would necessitate the vesting of the estate in the issue of such legatee surviving, and this question is not necessarily determined here.   The question here is whether there is an illegal suspension of ownership of this trust fund, and, as we have seen, there is no possibility of such suspension, for, by the terms of the will, the trust ends with the life of the legatee, and the original gift becomes effective, so that there is no intestacy as to the fund, and no suspension of ownership beyond the life of the legatee.

The fifth article of the will grants and bequeaths to a nephew the sum of $1,000, to be doubled if the nephew is married, and the sixth article reads as follows:

"I make and appoint my mother Caroline Hoffman residing in.the city of New Orleans, State of Louisiana, my residuary legatee, the amount to be placed in trust as herein provided in Art. VIII for her sole benefit, and the income thereof to be paid to her without the control of any other person whatsoever, the intention being to provide her with funds in her old age against all possible contingencies.   At her death, the principal and any accumulated

income there may be, shall be divided pro rata between the legatees named in Articles I, II and IV herein respectively upon the basis of their respective legacies herein and to be subject to the same trust restrictions stated herein appertaining to their several legacies hereunder."

That is, the trust fund provided for his mother was to be divided at her death, and shared by each of the several legatees mentioned on the basis of the former gifts. Each one took a positive and defined share of the residuary estate, subject to the trust provision, which was to terminate upon the death of each one of the legatees, the same as had been provided in the other positive gifts. The will did not continue the residuary estate in trust after the death of the testator's mother. It vested in the original legatees upon the basis of their original legacies, and the shares thus created simply constituted a new trust, which was to terminate absolutely upon the death of the owner of each several part.

The seventh article of the will provided that, if there was not enough of the residuary estate to provide a fund of at least $200,000 for the mother, then the other gifts should be scaled down to provide such fund, but this contingency could not arise, and so the clause is of no importance, except as indicating the intent of the testator to provide for his mother under all circumstances. The eighth article merely appoints the Union Trust Company of New York as executor and trustee under the will, and the ninth article gives to his mother certain personal articles, and this completes the will.

So far, there appears no difficulty in the matter. All of the provisions of the will are within the letter and spirit of the law, and all of the estate is disposed of according to the intention of the testator. Subsequently the will above considered was modified by a codicil, the first paragraph of which reads as follows:

"I hereby cancel and revoke all legacies devised and bequeathed in Art. IV herein in favor of Henrietta Louisa Hoffman and substitute in place thereof the sum of $25,000, say twenty-five thousand dollars subject to all of the conditions and terms as expressed in said Art. IV with this exception to-wit:— that the sum of $2500, say twenty-five hundred dollars instead of ten thousand dollars, be allowed her out of said amount for purchase of a home for herself if she so elects."

Obviously the only effect of this provision was to reduce the original legacy of $125,000 to $25,000, and proportionately to reduce the share of Henrietta Louisa Hoffman in the residuary estate, so called, in the event of the death of the testator's mother, which event actually occurred prior to the death of the testator.

The second paragraph of the codicil provides that:

"I hereby devise and bequeath unto my sister Widow Wilhemina Bourdette residing on Peters Avenue, Sixth District, City of New Orleans, La., the sum of $35,000, say thirty-five thousand dollars and to John F. Hoffman now residing on my Carolina Plantation Iberia Parish State of Louisiana the sum of $10,000, say ten thousand dollars. And I hereby make these two legatees, upon the death of my mother pro rata residuary legatees under the terms and conditions as set forth in Art. VI herein, as additional residuary legatees. The above legacy to John F. Hoffman is in addition to the one in his favor under Art. III herein."

Caroline Hoffman, testator's mother, John F. Hoffman, testator's brother, and Wilhemina Bourdette, testator's sister, the two latter of whom were made additional residuary legatees by the provisions of the codicil last above quoted, died prior to the death of the testator. No one seriously contends that either John F. Hoffman or his sister Wilhemina took anything under the codicil, but it is urged that, as the testator made them additional residuary legatees, this operated to cut down the shares of Margaret Hoffman, Carrie Hoffman, and Henrietta Louisa Hoffman as fixed by the will and codicil in the residuary estate after the death of testator's mother, on the theory that the testator intended such a result, and that thus the testator died intestate as to so much of the residuary estate as would have belonged to John F. Hoffman and his sister Wilhemina if the two latter had survived the testator. This construction is opposed to that rule which requires the construction which avoids intestacy, and is strained and unnatural. The clear intent of the testator was to give to his legatees, as a class, all of the residuary estate after the death of his mother. This was clearly expressed in the original will, and the codicil merely added two names to the class. The will concededly never operated to give either of these two parties any right or title to the specific legacies given them, or to give them any part of the residuary estate. If they had survived the testator, they would have participated in the residuary estate in the proportion that their legacies bore to those given to the other legatees, and, having predeceased the testator, they have no part either in the disposition of the specific legacies or in the division of the residuary estate. There was no gift to two or more persons, which under the provisions of the Revised Statutes would have constituted the legatees tenants in common (Matter of Kimberly, 150 N. Y. 90, 93, 44 N. E. 945), but specific gifts to each of several persons, first, of a definite sum in each of three instances, and then the gift of a proportionate share of the residuary estate, based upon the amount of the original gift. The amount given in the first instance to Margaret Hoffman of $75,000 fixed her share in the residuary estate. She was given $75,000 immediately, and the remainder upon the death of the testator's mother, for whom the residuary estate was held in trust. The codicil made specific bequests to two other persons individually, and provided that each of these persons should share in the residuary estate in proportion to their legacies, but both of these legacies became inoperative by reason of the death of the persons named prior to the death of the testator, and the specific legacies fell into the residuary estate. At the death of the testator, when the will became operative, the situation was exactly the same as though the last two legacies had not been provided for. They took no specific legacies, consequently they took no rights in the residuary estate. It was all there in the one fund to be divided among the several legatees in proportion to their specific legacies, and this disposed of all the estate. It was not a fund to be divided, depending for the amount upon the number to be divided with, but a fund to be distributed among his legatees in the proportion of their specific legacies. The language of the will disposed of this residuary estate, not to a class, but to individuals in specific proportions. If there had been no disposition of the residuary estate, there might be some force

in the contention of the appellants, but here the will itself provides for disposing of the residuary estate, and the residuary estate consists of all that has not been legally disposed of by the will itself, other than by the residuary clause. Morton v. Woodbury, 153 N. Y. 243, 257, 47 N. E. 283. There was no disposition of that part of the estate attempted to be given to John F. Hoffman and his sister Wilhemina, owing to the fact that they predeceased the testator, and these sums fell into the residuary estate. The doctrine is firmly established that where the residuary bequest is not circumscribed by clear expressions in the instrument, and the title of the residuary legatee is not narrowed by special words of unmistakable import, he will take whatever may fall into the residue, whether by lapse, invalid dispositions, or other accident. Morton v. Woodbury, supra, 153 N. Y. 254, 255, 47 N. E. 283, and authorities there cited. Here the residuary bequest was to each of several legatees in the proportion of their original legacies, and, there being no limiting words, it seems clear, under the authorities, that they take whatever remained undisposed of by the terms of the will other than the residuary clause.

The decree of the surrogate should be affirmed, with costs. All concur.