ARCHIBALD WIETING, ADMINISTRATOR, ETC., OF JACOB
H. WIETING, DECEASED, AND OTHERS, RESPONDENTS, *v.*
WILLIAM BELLINGER AND OTHERS, APPELLANTS.

*Devise of a fee in real estate excludes any restraint upon the power of alienation — a
legacy to be paid only in case such land is sold under execution, and then out of its
proceeds, is void — when successive purchasers of incumbered premises are entitled
to have it sold in the inverse order of alienation.*

In an action, brought to charge certain premises devised by the will of Jacob
Wieting, deceased, to his son, Christopher Lorenzo, with the payment of certain
legacies, it appeared that, by the tenth article of the testator's will, he devised
unto his son, Christopher Lorenzo, " on condition that he complies with the condi-
tions hereinafter named," his homestead farm and, also, a wood lot; and that the
will and codicil then made several bequests to his other children, $2,200 of which
Christopher Lorenzo was required to pay.   The will also contained these clauses:
" If in case my son, Christopher Lorenzo, shall, by ill or bad management,
become involved in debt in such manner that said homestead farm should have
to be sold by sheriff's sale, or some other public sale, in that case I do order and
direct that one thousand five hundred dollars be kept out of the sale of said
farm and equally divided among all my children as specified above." * * *
" The bequests to my son, Christopher Lorenzo, are not to be considered valid
or legal until he has fully paid the sums of money specified in this article, or, in
other words, the money which he is to pay to my executor is to be a lien on the
farm and wood lot till paid."

It further appeared that Christopher Lorenzo had become, twelve years after the
testator's death, involved in debt in such a manner that the said homestead farm
and the wood lot had to be sold at public sale to satisfy mortgages which he
had placed upon them; and that, under sales in foreclosure actions brought to
foreclose them, certain of the defendants had acquired the title to and owned
the same.

The trial court held that the provision for the payment of the $1,500 was valid and
created a lien upon the farm, and provided for its satisfaction by a sale thereof.

Upon an appeal from this judgment:

*Held,* that as the devise was absolute, the devisee by accepting it became liable
personally to pay the legacies charged upon the land devised.

That the devise was in fee simple, but incumbered with liens for the legacies
unconditionally given.

That, as an estate in fee simple excludes the idea of any restraint upon the power
of alienation, or of any liability to forfeiture, or of any limitation upon it, the
attempt to establish a legacy charge against the homestead, in case the home-
stead farm should be sold by public sale by reason of the ill or bad management
of Christopher Lorenzo, was an attempt to impose a restraint upon the alienation
of the estate in fee simple devised to Christopher, and was void.

*It seems* that if the devise had been to the son, and in case he should become bank-rupt or insolvent, or a judgment should be recovered against him, then over to satisfy this legacy, it would have been good.

The homestead was first mortgaged to Bellinger, and the wood lot was next mort-gaged to Getman, and some of the defendants owned the homestead under the sale in the foreclosure of the mortgage given upon that parcel, and the other defendants owned the wood lot under the sale in the foreclosure of the mortgage given upon that parcel.

*Held*, that the trial court erred in holding that these parcels should contribute ratably to the payment of the legacies unconditionally given, as no equities existed requiring a departure from the rule that, as between successive pur-chasers of parcels of incumbered premises, the sale, to satisfy the common incumbrance, should be in the inverse order of alienation.

That the purchasers at the two foreclosure sales, respectively, took whatever title Christopher Lorenzo had at the date of the mortgage under which the sale was had, and the title of the homestead under the first mortgage was subject to the liens of the unpaid legacies, but equitably protected against them to the extent of the wood lot, yet remaining in the hands of Christopher Lorenzo; and the title to the wood lot, acquired under the mortgage afterwards given upon it, was subject to the same equities in favor of the homestead title since the pur-chaser stood in Christopher Lorenzo's shoes.

APPEAL from a part of a judgment entered in the office of the clerk of Montgomery county on October 21, 1887, upon the decision of the court upon a trial at Special Term.

The action was brought to charge certain premises devised by the will of Jacob Wieting, deceased, to his son, Christopher Lorenzo, with the payment of certain legacies. The testator, by the tenth article of his will, devised his homestead farm to his son, Christopher Lorenzo, in fee, " on condition that he complies with the con-ditions hereinafter named." He then devised him a wood lot, in fee. His will then proceeds: "I order, request and desire that he, Christopher Lorenzo, pay $1,500 to be paid in two payments, to wit, $750 within three years after my decease, and $750 within five years after my decease, for the benefit of all my other children, except Jacob A. and Christopher Lorenzo; and I hereby order my executors to collect the same at the time specified, and divide the same equally among my children," naming them. By his codicil he directed " that in addition to the sums which Christopher Lorenzo is to pay for the benefit of my other children, as stated in article ten of said will, that he pay $700 for the benefit of all my other children. I, therefore, order and direct my executors, within

seven years after my decease, to collect $700 from him, Christopher Lorenzo, and divide the same equally among all my other children," naming them.    By the tenth clause of the will, as amended by the codicil, the testator provided : "If, however, my son Christopher Lorenzo should sell said homestead farm within fifteen years after my decease, which I now bequeath unto him, in that case I direct and order that he shall pay $1,500 in addition to the sum already mentioned; and I hereby order and direct my executors to retain said sum of $1,500 out of the sale of said farm, and divide the same among all my children," naming them.

This clause of the will the court held to be void, as repugnant to the fee devised, and no appeal has been taken.    The tenth clause further proceeded : "Or, if in case my son, Christopher Lorenzo, shall, by ill or bad management, become involved in debt in such manner that said homestead farm should have to be sold by sheriff's sale, or some other public sale, in that case I order and direct that $1,500 be kept out of the said sale of said farm and equally divided among all my children, as specified above."    *    *    *    "The bequests made to my son, Christopher Lorenzo, are not to be considered valid or legal until he has fully paid the sums of money specified in this article, or, in other words, the money which he is to pay to my executors is to be a lien on the farm and wood lot till paid."

Christopher Lorenzo did not pay in full the sums he was directed to pay in three, five and seven years.    He was the sole executor who qualified.    He mortgaged the homestead to Lewis H. Bellinger in 1877 to secure the payment of his bond to him for $4,000, and in 1878 for $1,000 more.    These mortgages embraced twenty-five acres of other land purchased by him after his father's death.    After the Bellinger mortgages had been recorded he gave a mortgage for $800 to Rebecca Getman to secure his bond to her for that sum. The Bellinger mortgages were foreclosed and the mortgaged premises sold to the mortgagee in February, 1880, for $5,000, leaving a deficiency of $868.91.    The mortgage on the wood lot was also foreclosed, and the lot was sold to Benjamin Getman in August, 1879, for $600, leaving a deficiency of $427.10.    Christopher Lorenzo has since remained insolvent.    The plaintiffs are the legatees, or their administrators, or assignees, under the will of Jacob Wieting.

The court held that the homestead and wood lot were subject to the unpaid portions of the three legacies, payable in three, five and seven years, and are to be collected out of the same. No question is made here as to the correctness of the decision in that respect, except among the defendants themselves, as to priority of liability. The plaintiffs were not parties to the foreclosure action, but they gave notice at each foreclosure sale of the claims they seek to enforce in this action.

The main question raised by this appeal is as to the judgment declaring the legacy of $1,500 to be given in case of a sheriff's sale or some other public sale of the premises.

*E. Countryman*, for the appellant Bellinger.

*Shultz & Borst*, for the defendant, respondent, Getman.

*William Kernan*, for the plaintiffs, respondents.

LANDON, J.:

The tenth article of the testator's will contained the following clause:

"I give, devise and bequeath unto my son, Christopher Lorenzo (on condition that he complies with the conditions hereinafter named), my homestead farm." The will and codicil then made several bequests to his other children, $2,200 of which Christopher Lorenzo was required to pay. Then followed these clauses in the will: "If in case my son, Christopher Lorenzo, shall, by ill or bad management, become involved in debt in such a manner that said homestead farm would have to be sold by sheriff's sale, or some other public sale, in that case I order and direct that $1,500 be kept out of the sale of said farm and equally divided among all my children, as specified above." "The bequests to my son Christopher Lorenzo are not to be considered valid or legal until he has fully paid the sums of money specified in this article, or, in other words, the money which he is to pay to my executors is to be a lien on the farm and wood lot till paid."

Christopher Lorenzo did become, twelve years after the testator's death, involved in debt in such a manner that the said homestead farm had to be sold at public sale to satisfy the mortgages which he placed upon it, and under which sale in foreclosure the defendants,

Bellinger, now own the same. The trial court held that the provision for the payment of $1,500 was a valid one and a lien upon the land, and the judgment provides for its satisfaction by a sale thereof.

The testator devised his homestead farm to Christopher Lorenzo "on condition that he complies with the conditions hereinafter named." These conditions are that he pay the legacies which he bequeaths to his other children. He explains his meaning thus: "The money which he is to pay to my executors is to be a lien on the farm and wood lot till paid." The conditions are not made grounds of forfeiture, but are secured by being made liens. The devise is absolute, and the devisee by accepting it becomes liable, personally, to pay the legacies charged upon it. (*Gridley* v. *Gridley*, 24 N. Y., 134.) The devise is in fee simple, but incumbered with liens for the legacies unconditionally given. (*Fox* v. *Phelps*, 17 Wend., 393; *Helmer* v. *Shoemaker*, 22 id., 137; *Parsons* v. *Best*, 1 T. & C., 211; *Roseboom* v. *Roseboom*, 81 N. Y., 356; *Clarke* v. *Leupp*, 88 id., 228; *Campbell* v. *Beaumont*, 91 id., 465.) An estate in fee simple excludes the idea of any restraints upon the power of alienation, or of any liability to forfeiture, or of any limitations upon it; hence when full title is given any attempted restraint upon alienation must be void because unable to co-exist with it and repugnant to it. (Same cases; *Oxley* v. *Lane*, 35 N. Y., 346; *De Peyster* v. *Michael*, 6 id., 491; *Newkerk* v. *Newkerk*, 2 Caines, 345; *Craig* v. *Wells*, 11 N. Y., 315.) But here the attempt appears to have been to permit to the devisee full power of alienation with liability to incumber his estate through bad management; but in the event of his incurring the lawful consequences of this liability to charge a further legacy of $1,500 upon him, and keep the amount out of the proceeds realized to satisfy his liabilities. The testator could give as many legacies as he chose. He could make their gift dependent upon the happening of a future event; in other words, could annex the gift to the event. Such a legacy would be valid provided the testator made lawful provision for its payment. The testator made no provision from his personal property for this legacy; but he attempted to provide for it at the expense of Christopher Lorenzo's creditors. He contemplates the contingency that Christopher will become by

his bad management so involved in debt that the homestead devised to him will have to be sold to pay his debts. He admits the paramount right of the creditors to compel the sale to satisfy their demands; and then he insists that they must not be satisfied, and he tries to intercept the proceeds of the sale and apply them upon this legacy. The legacy does not vest while Christopher holds the land, and it is difficult to see how it can become a lien upon it afterwards. It is equally difficult to see how the testator can permit Christopher Lorenzo to squander his inheritance, and yet retain the right to reclaim it afterwards and bestow it anew. There seems to be no provision for the payment of this legacy except the impossible one of applying property after it has been wasted.

This attempt to establish a legacy charge against the homestead is an attempt to impose a restraint upon the alienation of the estate in fee simple, devised to Christopher Lorenzo, and, within the cases already cited, is void. If the devise had been to the son, and in case he should become bankrupt or insolvent, or a judgment should be recovered against him, then over to satisfy this legacy, it would have been good. (*Bramhall* v. *Ferris*, 14 N. Y., 41, and cases there cited; *Nichols* v. *Eaton*, 91 U. S., 716.) In *Bramhall* v. *Ferris* it is held that a testator may devise his estate to A, to hold until some event happens like bankruptcy, and then give it to B, but in the absence of any devise over, A will take the entire estate, and any attempt to clog it with conditions short of a devise over will be nugatory. The court quotes, with approval, from *Brandon* v. *Robinson* (18 Ves., 429) the distinction applicable to the case before us : " There is an obvious distinction between a disposition to a man until he becomes bankrupt, and then over, and an attempt to give him property and to prevent his creditors from obtaining any interest in it though it is his."

This legacy was sought to be conditionally charged upon real estate. There was no trust and no direction by the testator to sell the real estate to raise the legacy. There was no devise over for the purpose of satisfying it. Instead of an attempt to divest Christopher Lorenzo of the land by a devise over upon his becoming insolvent, he permits him to divest himself of it by his improvidence, and then attempts to intercept the proceeds. These proceeds are not his

to bestow, and they are not realized by any scheme of his, but by virtue of methods which he foresees and·deprecates. This legacy fails because there was no lawful provision for its payment. The condition imposed upon the devisee's full power of alienation is void, because it is a restraint repugnant to the estate in fee simple devised to him.

A question arises between the defendants respecting the priority of liability of the wood lot and homestead to sale to satisfy the unpaid part of the $2,200 legacies, which were found to be liens upon both premises. The homestead was first mortgaged to Bellinger and the wood lot next mortgaged to Getman, and some of the defendants own the homestead under the sale in foreclosure of that parcel, and other defendants own the wood lot under the foreclosure sale of that parcel. The trial court held, that these parcels should contribute ratably. When Bellinger took the mortgage upon the homestead, Christopher Lorenzo had the wood lot remaining from which to satisfy the legacies, and as between them the wood lot was liable to be sold first. Subject to that liability Christopher Lorenzo gave the mortgage to Getman. No equities exist requiring a departure from the rule that as between successive purchasers of parcels of incumbered premises, the sale to satisfy the common incumbrance should be in the inverse order of alienation. The purchasers at the two foreclosure sales, respectively, took whatever title Christopher Lorenzo had at the date of the mortgage under which the sale was had; the title to the homestead under the first mortgage was subject to the liens of the unpaid legacies, but equitably protected against them to the extent of the wood lot, yet remaining in the hands of Christopher Lorenzo; and the title to the wood lot under the mortgage afterwards given upon it is subject to the same equities in favor of the homestead title since the purchaser stands in Christopher Lorenzo's shoes.

There was no appeal from that part of the judgment adjudging the invalidity of that clause of the will which imposed upon Christopher Lorenzo the payment of additional legacies in case he sold the homestead within fifteen years, and although we are urged to review it we must decline to do so. It seems to have been an illegal restraint upon alienation.

The judgment should be modified by declaring the clause in the

will void which provided that in case Christopher Lorenzo should become involved in debt in such manner that the homestead would have to be sold, the sum of $1,500 should be kept out of the sale and paid to the testator's other children, and by striking from the judgment the provisions dependent thereupon; also, by directing that the wood lot be first sold to pay the unpaid portions of the other legacies.

Costs of this appeal are allowed to the appellants against the plaintiffs, respondents.

LEARNED, P. J., and INGALLS, J., concurred.

Judgment modified in accordance with opinion; costs allowed to appellants against plaintiffs, respondents; order to be settled by LANDON, J.