(153 App. Div. 270.)

### HACKER et al. v. HACKER et al.

(Supreme Court, Appellate Division, Second Department. November 1, 1912.)

1. WILLS (§§ 601, 612*)—CONSTRUCTION—LIMITATION UPON ESTATE.
    In a will providing in one clause that "after my lawful debts are paid, I give devise and bequeath all the remainder of my estates both real and personal to my nephew," and in a subsequent clause "that the said estate shall not be giving or sold only in the name of the H. family and must remain the H. estates forever," the latter clause was ineffectual to limit

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the quality of the estate given by the preceding words of absolute bequest.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1340–1350, 1387–1392, 1608; Dec. Dig. §§ 601, 612.*]

2. WILLS (§ 81*)—CONSTRUCTION—VALIDITY.

Where a will contains two provisions, each complete in itself, one of which is valid and the other void, the entire will should not be rejected, on the mere supposition that the valid provision would not have been made, if the testator had known that the void provision was unenforceable, at least where the one is not absolutely dependent upon the other.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 201, 202; Dec. Dig. § 81.*]

3. WILLS (§ 579*)—CONSTRUCTION—WORDS OF DESCRIPTION.

Where a provision of a will that "after my lawful debts are paid, I give devise and bequeath all the remainder of my estates both real and personal," was followed immediately by the words, "my farm and house and furniture household goods therein contained where I now reside," and the effect of construing the specific words as words of limitation would be to produce intestacy of nearly one-half of testator's entire estate, such specific words were merely descriptive of the preceding general words, "of the remainder of my estates," although the description was imperfect, and the will in other clauses bequeathed $1,000 to another legatee and authorized the executor to compromise or settle any claims of or against the estate.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1266; Dec. Dig. § 579.*]

4. WILLS (§ 559*)—CONSTRUCTION—"ESTATES."

The word "estates" in a will was broad enough to cover all property, whether real or personal, which the testator left behind him.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1207–1209; Dec. Dig. § 559.*

For other definitions, see Words and Phrases, vol. 3, pp. 2475–2488; vol. 8, pp. 7653, 7654.]

5. WILLS (§ 579*)—CONSTRUCTION—RULE OF PRESUMPTION.

The rule that where certain things are enumerated in a will, and such enumeration is coupled with a more general description, such general description covers only things of the same kind, is merely a rule of presumption, and yields to the testator's intent as gathered from the whole instrument.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1266; Dec. Dig. § 579.*]

6. WILLS (§ 588*)—CONSTRUCTION—BEQUEST FOLLOWING RESIDUARY CLAUSE.

A particular bequest to a different legatee, following a residuary clause of a will reading, "after my lawful debts are paid, I give devise and bequeath all the remainder of my estates both real and personal to my nephew," creates an exception out of the property covered by the residuary clause.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1280; Dec. Dig. § 588.*]

Appeal from Special Term, Rockland County.

Action by Klara Hacker and others against Joseph Carl Hacker, impleaded with Philip Young. From the judgment (75 Misc. Rep. 380, 133 N. Y. Supp. 266), defendant Joseph Carl Hacker appeals. Reversed, and order dismissed.

Argued before HIRSCHBERG, BURR, CARR, WOODWARD, and RICH, JJ.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Leonard J. Reynolds, of Brooklyn (Harvey De Baun, of Haverstraw, and Richard A. Geis, of Brooklyn, on the brief), for appellant.

David Leventritt, of New York City (Otto C. Sommerich, of New York City, on the brief), for respondents.

BURR, J. Two questions demand consideration and determination: First, is the testamentary gift to Joseph Carl Hacker a valid one? and, second, what is included in the terms thereof?

[1] If the clause of disposition had been wholly comprised in the words "after my lawful debts are paid, I give devise and bequeath all the remainder of my estates both real and personal to my nephew Joseph Carl Hacker," there would be no question that these constituted a valid devise of the real property in fee simple, and a valid bequest of the personal property in absolute ownership. Real Property Law (Consol. Laws, c. 50 [Laws 1909, c. 52]) § 240. When an estate is given in one part of a will in clear and decisive terms, it cannot be taken away or cut down by any subsequent words that are not as clear and decisive as the words creating the estate. 1 Thomas' Law of Estates by Will, 117; Roseboom v. Roseboom, 81 N. Y. 356; Clarke v. Leupp, 88 N. Y. 228; Campbell v. Beaumont, 91 N. Y. 464. Is this otherwise absolute devise and bequest affected by any subsequent provisions of said will? If such is the case, it must be by that clause of the will designated by the Roman numeral "II," and in these words:

"That the said estate shall not be giving or sold only in the name of the Hacker family and must remain the Hacker estates forever."

The meaning of this clause is somewhat obscure. We think that we construe it as strongly as possible in favor of plaintiffs, who attack the validity of the gift, if we conclude that it meant that it was testator's desire that the said Joseph Carl Hacker should neither give away nor sell the said estates to any one except a member of the Hacker family, and that, so far as the same was described by a name, it should be called the "Hacker property." It is possible that, in the absence of descendants, testator, longing in some manner to perpetuate his name, attempted to do so by some such method. The sentence is an incomplete one. It may quite as well be completed by the use of the words "it is my desire," preceding the words actually employed, as by others. The view that the testator did not intend to destroy the entire estate of defendant in the lands just given to him, as would follow if the contention of plaintiffs is correct, is strengthened by the fact that the only beneficiary in his thought, so far as expressed, is his nephew, Joseph Carl Hacker, and by the additional fact that there is no gift over to any other person. But if the words should be construed as an attempted limitation upon the estate given to defendant, such words, following those of absolute devise and bequest, are ineffectual to limit the quality of the estate given. Roosevelt v. Thurman, 1 Johns. Ch. 220; Schermerhorn v. Negus, 1 Denio, 448; De Peyster v. Michael, 6 N. Y. 467, 57 Am. Dec. 470; Oxley v. Lane, 35 N. Y. 340; Campbell v. Beaumont, supra; Greene v. Greene, 125

N. Y. 506, 26 N. E. 739, 21 Am. St. Rep. 743; Wieting v. Bellinger, 50 Hun, 324, 3 N. Y. Supp. 361; Booker v. Booker, 119 App. Div. 482, 104 N. Y. Supp. 21.

In Roosevelt v. Thurman, supra, decided in 1814 by Chancellor Kent, the devise was to testator's nephew Richardson, "to be given him as soon as he comes to the age of 21 years; but should Richardson die before he comes of age, and without male issue," there was a gift over to testator's brother Ralph. Then followed this clause:

"The first possessor, as soon as his first male child shall come to the age of 21 years, it is my will that the right of the said houses be to him, his heirs and assigns, forever, but not to be disposed of by him before his eldest son comes of age."

Richardson died during testator's lifetime, and the clause of the will relating to him never became operative. Under the clause for a devise over to testator's brother Ralph, the latter entered into possession of the property upon testator's death, and became the "first possessor" thereof. The Chancellor held that, if the will had stopped with the words first above quoted, Ralph "would have taken an estate in fee, or an estate tail, under the English law, which by our statute is now turned into an estate in fee." Real Property Law (Consolidated Laws, c. 50 [Laws of 1909, c. 52]) § 32. He continues:

"But the principal difficulty has arisen from the subsequent part of the will."

The Chancellor then quotes the clause above referred to, and continues:

"It is contended, on the part of the plaintiffs, that here is an executory devise ingrafted on the preceding fee; and, on the part of the defendant, that it is only a temporary restriction intended by the testator upon the power of alienation, and that the restriction is so far void as being repugnant to the nature of the estate. It appears to me, on an examination of the will, that the latter is the sounder construction."

In the case of Schermerhorn v. Negus, supra, decided in 1845, the devise was contained in a clause which, as in the case at bar, was sufficient, standing alone, to pass a fee. This was followed by another clause in words as follows:

"Item. It is my true intent and meaning of this my last will and testament (anything herein contained to the contrary thereof in any wise notwithstanding) that no part or parcel of the real estate herein above by me devised shall be sold or alienated by any of my above named children, or by any of their descendants or posterity, except it be to each other, or to their and each of their descendants, upon pain that he, she or they shall forfeit the same and be debarred of holding any part thereof."

In that case, as here, contention was made that the provision restraining alienation, except among the devisees and their descendants, rendered the entire devise void for creating a perpetuity. This contention was overruled, and the court (Judge Beardsley) said:

"The will of Ryer Schermerhorn was not annulled by the clause which it contained against alienation, although that clause, being repugnant to the nature of the estate devised, was void, at least as to those who were to take a fee under the will."

The well-established rule of the English law, since the abolition of feudal tenures by the statute of quia emptores, "that when an estate in fee simple is granted, a condition that the grantee shall not alien the land is void," has been steadily adhered to. The history of the rule respecting restraints upon alienation is interestingly stated by Chief Judge Ruggles in his opinion in De Peyster v. Michael, supra, and one reason for the present rule is stated to be:

"That a fee-simple estate and a restraint upon its alienation cannot in their nature coexist."

Whether or no the English statute of quia emptores ever became part of the law of this state (see De Peyster v. Michael, supra; Van Rensselaer v. Hays, 19 N. Y. 68, 75 Am. Dec. 278), it is now provided by our state Constitution that:

"All feudal tenures of every description, with all their incidents, are declared to be abolished." Constitution, art. 1, § 11.

It is also now well settled that the courts lean in favor of the preservation of all such valid parts of a will as can be separated from those that are invalid without defeating the general intent of the testator. Harrison v. Harrison, 36 N. Y. 543; Henderson v. Henderson, 113 N. Y. 1, 20 N. E. 814.

The learned justice at Special Term in his opinion argues that the testator's intent must be gathered from the entire will, and that his intent originally expressed to devise a fee is qualified by the subsequent expression of intent to restrain the absolute power of disposition, and that we may not conclude that testator would have used the prior words of absolute gift if he had supposed that the subsequent words of restraint would be ineffectual except as an expression of his desire. The conclusion does not seem to us to follow. It is like saying the testator did not intend to make any disposition of his estate at all; for while in one breath he gives it away absolutely, in the next breath he revokes the gift. The same argument as to intention might have been made in each of the other cases above cited. In some instances, particularly in the Schermerhorn Case, there is stronger indication of a qualified intent, since there there was a gift over if the condition was broken, which does not appear in the will under consideration. It by no means follows that testator would not have done precisely the same thing that he did in the first clause of his will, if he had been aware that the subsequent words must be treated only as words of request, and not as binding and effectual conditions of or limitations upon the prior gift.

[2] Where a will contains two provisions, each complete in itself, one of which is valid and the other void, the entire will should not be rejected upon the supposition that the valid provision would not have been made if testator had known that the void provision was unenforceable. At least, there must be clear evidence that one was absolutely dependent upon the other. If the latter clause of this will be construed as indicative of such an intent as plaintiffs contend, in the language of the learned Chancellor in Roosevelt v. Thurman, supra:

"Being an intention inconsistent with the rules of law, it must be rejected."

[3] If we are right in our conclusions thus far, we must consider the second question involved, namely, what is included in the words "after my lawful debts are paid, I give devise and bequeath all the remainder of my estates both real and personal," followed as they are immediately by the words, "my farm and house and furniture household goods therein contained where I now reside at Nanuet, in the town of Clarkstown, county of Rockland and state of New York," and subsequently, in a later clause of the will, by the words "I give, devise and bequeath to Philip Young one thousand dollars."

[4] The word "estates" is broad enough in signification to cover all property, whether real or personal, which a man leaves behind him at the time of his death. Sulz v. Mutual Reserve Fund Life Association, 145 N. Y. 563, 574, 40 N. E. 242, 28 L. R. A. 379; Taylor v. Dodd, 58 N. Y. 335, 344. But decedent left other property than that specifically enumerated. Two constructions of this clause are possible: The first, that the more specific words are merely descriptive of the preceding general words, "all the remainder of my estates," although the description contained therein is an imperfect one; the second, that they are words of limitation, and that nothing passes under the first clause of the will except the farm, the house, and the furniture and household goods therein contained. For this latter construction plaintiffs contend. We believe that the former is to be preferred. The effect of the latter construction would be to produce intestacy as to one parcel of real estate and $5,000 in money, amounting together to nearly, if not quite, one-half of testator's entire estate. Where the whole will indicates nothing to the contrary, a gift by words of general description is not to be limited by a subsequent attempt at a particular description. Schouler on Wills, § 475; Martin v. Smith, 124 Mass. 111.

[5] We do not lose sight of the general rule that:

"Where certain things are enumerated, and such enumeration is followed or coupled with a more general description, such general description is commonly understood to cover only things ejusdem generis with the particular things mentioned." Matter of Robinson, 203 N. Y. 380, 96 N. E. 925, 37 L. R. A. (N. S.) 1023.

But this is, "after all, but a rule of presumption, as we should bear carefully in mind. It yields to the testator's intent as gathered from the whole instrument." Schouler on Wills, § 514. There is less inclination to thus limit general words of description when they appear in a residuary clause, and the result of so doing will be partial intestacy; for in the absence of clear evidence to the contrary a testator by his last will and testament is presumed to intend to dispose of all of his property. Schouler on Wills, § 490. To quote again from this distinguished author:

"Courts at the present day decline to be hampered by any rule which would sacrifice the testator's true meaning out of undue regard for the association of words of limited scope with broad generic terms; and the modern inclination both in England and America is to treat words of general description as unlimited in sense by an attempt to state particulars, where the will as a whole discloses no intention to the contrary, though not, of course, where this favorable presumption is overcome." Schouler on Wills, § 514.

But no intention to thus limit the general words of gift is here disclosed. It cannot be found in the fact that the general residuary clause in this will is not the last disposing clause therein, but is followed by a clause providing for a legacy of $1,000 to Philip Young. Morton v. Woodbury, 153 N. Y. 243, 47 N. E. 283.

[6] Though the residuary clause is usually, it need not necessarily be, the last in the will, and any particular bequest which follows that clause may, if made to different legatees, reasonably be read as an exception out of the property comprised in it. 1 Jarman on Wills (6th Am. Ed.) p. 728; Morton v. Woodbury, supra. Nor can any such intent be found in the clause authorizing the executor "to compon (compound?), compromise, or settle" any claims or demands which may be against or in favor of testator's estate. If any inference may be drawn therefrom, it is to the contrary. If the particular words shall be allowed to limit the general, as we have pointed out, it results in the testator dying intestate as to nearly one-half of his estate. Under such circumstances, he might not be solicitous as to the disposition of disputed claims, either in favor of or against his estate. Indifference as to the ultimate recipients of so large a portion thereof might easily be coupled with indifference as to the preservation of it from needless and expensive litigation. If, on the contrary, testator supposed that he was disposing of all of his property, he might well be desirous to give his approval to the efforts of the executor to safeguard it, although, since in this case the executor and the beneficiary are the same person, such approval might be unnecessary.

We conclude, therefore, that the will of Ulrich Hacker contained a valid disposition of his entire estate, and that defendant Joseph Carl Hacker is the absolute owner of the whole thereof, except to the extent of the legacy to Philip Young.

The judgment should be reversed, with costs of this appeal, and, as under no circumstances can the plaintiffs maintain this action, the complaint should be dismissed, with costs. All concur.