Matter of the Petition of THE PEOPLES TRUST COMPANY, to Render and Settle the Account of Its Proceedings as Executor of the Last Will and Testament of STEPHEN WILLIAMSON, Deceased.

(Surrogate's Court, Kings County, March, 1919.)

Wills — construction of — legacies — when gift payable as a general legacy.

A will directed the executor to pay off an $1,100 mortgage upon either of two houses of testator's sister-in-law, known as Nos. 965 and 967 Herkimer street, Brooklyn, N. Y., in

39

Surrogate's Court, Kings County, March, 1919.    [Vol. 106.

which street testator had lived for many years, out of the
first funds available after his death, "said payment to be a
bequest to my said sister-in-law." Though at the time of the
making of the will the sister-in-law owned no property in
Herkimer street, she did own Nos. 963 and 965 Putnam avenue
in said city, upon which there was and now is an $1,100 mort-
gage. *Held,* that there was a gift to the sister-in-law of $1,100
payable as a general legacy.

PROCEEDING upon the judicial settlement of the
account of an executor.

Wingate & Cullen, for executor.

James A. Blanchfield, for Gertrude Williamson.

Edward Q. Carr, special guardian.

KETCHAM, S. The 5th paragraph of the will under
which this account is made is as follows:

"*Fifth.* I direct my executor hereinafter named to
pay off the Eleven hundred dollar ($1,100.) mortgage
upon either of the houses of my sister-in-law, Mary
Williamson, known as Numbers 965 and 967 Herkimer
Street, in the Borough of Brooklyn, City of New York,
together with any arrears of interest thereon, out of
the first funds that may be available after my death,
in case there is then any mortgage unpaid thereon, said
payment to be a bequest to my said sister-in-law."

It is claimed that the provision for the payment of
the $1,100 mortgage must fail because the premises on
which, according to the will, the mortgage was a lien
were therein described as either 965 or 967 Herkimer
street, while in fact the beneficiary of the provision
had no premises in Herkimer street. It is true that
she owned no property in Herkimer street, but she did
own two houses in Putnam avenue, Nos. 963 and 965,
and at the time when the will was made there was and

is now a mortgage of $1,100 on the house No. 963 Putnam avenue. The sister-in-law then lived in the house No. 965 Putnam avenue, and the testator had lived in Herkimer street for many years, about twelve blocks from the residence of a sister-in-law, and was familiar with the neighborhood.

There were three elements of description employed in the will to designate the mortgage which was to be paid, two of which aptly applied to the mortgage on 963 Putnam avenue, and one of which was erroneous. The house on which the mortgage intended to be paid was a lien was correctly described as " either of the houses of my sister-in-law." The mortgage intended to be paid was correctly described as a mortgage of $1,100 on one of the sister-in-law's houses. The remaining detail of description was wrong, for she had no house in Herkimer street. But the designation of the mortgage by its amount and as a mortgage on a house of the sister-in-law was quite as definite and demonstrative as the inaccurate description by the number and name of the street. Hence, when two elements characterizing the mortgage point unfailingly to the incumbrance upon a house which was in Putnam avenue, and one element only is in discord, an ambiguity lurks in the description, which must be solved by parol evidence. The evidence which discloses the ambiguity resolves it.

The testator meant that an $1,100 mortgage should be paid off. His solicitude for his sister-in-law appears in his direction that it should be paid out of the first funds that may be available after his death. He himself had three pieces of property situated in Herkimer street, and in his will there were written four references to them by the use of the name " Herkimer." That he fell into mistake when he described the property known to be of his sister-in-law by the

use of the name Herkimer is certain, for she had no property of that name. His mistake in this respect being necessarily conceded, the method of his error is plain. Either he or his draftsman having the street name in mind from its earlier use in the will was led into its misuse when the property of the sister-in-law came to be described.

This is a case in which every mind which addresses itself to the question will resolve that the testator meant to direct the payment of the mortgage on the house in Putnam avenue, and the wisdom of the law will not be less than that of the wayfaring man.

The direction that the payment of the mortgage is " to be a bequest to my said sister-in-law " must be regarded as a direct gift of the sum named. True, it is the payment that is said to be a bequest, but it is reasonable to say that it is the payment directed or the provision for payment which is contemplated as forming a bequest. There would be no sense in a construction which would make the legacy consist of the actual payment. A bequest must be a gift completed in intention by the will. The mind cannot conceive of a bequest which could never come into existence until it was discharged. Unless it was meant to extend the direction as to a limited method of payment, the provision that the sister-in-law should have a bequest was without office in the will.

The instrument should be considered as if it read: " I give to my sister-in-law $1,100 as a bequest, which I direct my executors to carry into effect by the payment of a mortgage on her property." The significance of an actual gift of $1,100 vested by the will at the death of the testator, is that the legatee was to have that amount in any event, and that if the means prescribed for its payment should fail, the gift would still be preserved.

The bequest is the primary feature of the provision under examination, and the method of payment is a mere incident. It is evidence of a testamentary intent that the legatee shall have the benefit thereof in any event, for one of the fixed ingredients in a bequest is that it shall be paid. If the purpose of the testator that it shall be paid by means prescribed in his will be disappointed, there still remains the gift embracing all the features of a general legacy of money.

Again, if the will at bar cannot be considered as if there were an adequate description of the mortgage on 963 Putnam avenue, then it results that there was a clear intention that the sister-in-law should be benefited to the amount of $1,100, and that the will indicates a means of assuring that benefit which is impossible. In such event, clearly the primary purpose that she shall have the equivalent of $1,100 must dominate. The bequest of $1,100 must prevail, unless it is cut down or impaired by other provisions of the will of at least equal force and expression. *Roseboom* v. *Roseboom,* 81 N. Y. 356; *Clarke* v. *Leupp,* 88 id. 228; *Campbell* v. *Beaumont,* 91 id. 464; *Freeman* v. *Coit,* 96 id. 63; *Benson* v. *Corbin,* 145 id. 351; *Hacker* v. *Hacker,* 153 App. Div. 270; *Matter of Griffith,* 105 Misc. Rep. 562.

It must be admitted that the language of this will by which it is sought to limit the benefaction of the testator to a mode of discharge is not as clear and express as the words containing the gift. If such language be confined to a direction that the bequest shall be discharged by the payment of a mortgage upon the house, owned by the sister-in-law and situate in Herkimer street, it then is senseless and inefficient for any purpose. We have then a plain intention to secure the sister-in-law the benefit of $1,100, and, indeed, a bequest to her of that amount. Can this be cut down or impaired by a direction which, upon parol explana-

Surrogate's Court, Kings County, March, 1919.   [Vol. 106.

tion, appears as a mere confusion of words incapable of any application to the testator's intent?

There are many English cases holding that where a benefit for a person named is conferred by will for a specific purpose and that purpose cannot be fulfilled, the beneficiary is entitled to the benefit generally, and may enjoy the same as an unconditional bequest.

In *Hammond* v. *Neame,* 1 Swan. 35, there was a gift in trust to pay the income to M. H. H. for and toward the maintenance and education of all and every child of the said M. H. H. until such children should attain the age of twenty-one years, then to transfer the principal equally among such children; or in default of such issue to the nephews and nieces of the testator living at the death of M. H. H.   The said M. H. H., not having any children, was held to be entitled absolutely to the accrued income.

Upon the authority of this case and others, the vice chancellor in *Earl of Lonsdale* v. *Countess of Berchtoldt,* 3 K. & J. 185, laid down the following rule: " Where a benefit is conferred by will for a specific purpose, although that purpose cannot be achieved *modo et forma* as intended by the testator, still, if there is a clear intention on the part of the testator that the benefit should be conferred — if the testator has excepted from the general property bequeathed to the residuary legatee, the property the subject of the specific bequest, for the benefit of the specific legatee, the latter is entitled to the benefit of the bequest, and to enjoy it in any manner he may think fit."

It is apparent from the application of this doctrine, which was made in the case cited, that the statement was intended to cover any form of gift whatever and was not limited to such bequest as might technically be specific.

There the direction of the will was that the income

of £8,000 should be applied to the ground rent and other charges on a certain leasehold devised for life to the defendant. The leasehold premises under order of the court were found to be *damnosa hæreditas* and were sold by the executors. The defendant having declined to enter into possession of the premises, it was adjudged that she was entitled to the income of £8,000.

The principal declared in the quotation *supra* has been applied in many cases.

In *Barton* v. *Cooke,* 5 Ves. 461, the executors were directed to pay a sum for the board and education of one until he should become fit to be put out as apprentice, and the legatee having attained the age of nineteen years and not having been bound out, it was held that he was entitled to the legacy.

*Webb* v. *Kelly,* 9 Sim. 469, was a case in which there was a trust to apply rents to the maintenance and education of one who died during the trust. It was held that rents accruing after her death and before the death of one upon whose life the trust was limited belonged as an absolute gift to the legatee for whose maintenance and education the trust was created, and that the aggregate rents were payable to her representatives.

In *Younghusband* v. *Gisborne,* 1 Colly. 400, a trust for the support, clothing and maintenance of an adult was held to be a trust for his benefit generally and to devolve upon his assignees in insolvency.

In *Lewes* v. *Lewes,* 16 Sim. 266, there was involved a trust to pay from rents a yearly sum for the clothing and education of all the children of a son during the son's life. One of the three children having died during the life of his father, it was held that his representatives were entitled to one-third of the income during the life of the father.

Surrogate's Court, Kings County, March, 1919.    [Vol. 106.

In *Noel* v. *Jones,* 16 Sim. 309, the trustees of a will were directed from the personal estate to pay and apply £800 in and upon the education of an infant, and it was held that as the legacy was given for the benefit of the infant in a particular mode, it must be taken as a general legacy payable with interest from one year after the death of the testatrix.

In *Presant* v. *Goodwin,* 1 Sw. & Tr. 544, the will directed that the residue of the estate should be appropriated to the education of certain children as should seem most meet and beneficial to them by the executors, " recommending to them (the executors) that the boys receive a classical education to fit them for the learned professions, etc." The children having all grown to their majority at the death of the testator, it was held that they were entitled as legatees to the whole residue.

In *Matter of Skinners Trusts,* 1 J. & H. 102, there was a gift of a manuscript work of the testator to trustees " for his grand-son, with directions that the work should be published, to the best advantage for the interest of the grand-son, and there was a bequest of £1,000 toward such publication." The publication having been abandoned as unprofitable, it was held that the grandson was entitled to the sum of £1,000 as a legacy made to him for his benefit.

In *Apreece* v. *Apreece,* 1 V. & B. 364, there were two legacies of fifty pounds for a ring. Upon a claim of interest on these legacies as general and not specific, the claim was allowed on the ground that the legacies were general.

The controlling test in these cases is whether or not there was a testamentary provision intended for the benefit of the supposed legatee, and in all of these decisions it appears that, if the benefit was intended to be exercised by a specific method, the gift was to be

effectual for the general benefit of the legatee by a construction that the gift was general and absolute.

The conclusion is that there was a gift to the sister-in-law of $1,100, payable as a general legacy.

Decreed accordingly.